**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| Marilyn J. Wallace, | ) |
| | ) |
| Plaintiff/ Petitioner – Appellant, | ) |
| | ) |
| v. | )    Case No. 09-8048 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant/Respondent -- Appellee. | ) |

### APPELLANT'S OPENING BRIEF
### FORM A-12

Appellant hereby files completed answers to Form A-12 in lieu of a formal brief.

On April 8th 2009, Honorable U.S. District Judge Clarence A. Brimmer granted Defendant's summary judgment. In its order, the Court claimed that Plaintiff's complaint is time-barred and refused to address the issue of whether the IRS assessment or levy was excessive.

The facts and arguments presented herein focus on these two main points. All the exhibits referred to herein were filed with the District Court.

I.      **Statement of the Case**

1.      On October 11, 2007, Plaintiff-Appellant Marilyn Wallace filed a complaint in the U.S. District Court for the District of Columbia ("D.C. Court") against Defendant seeking damages for Illegal Tax Collections under IRC §7433. (Case No. 07-1837-RMU) Honorable U.S. District Judge Ricardo M. Urbina issued an Order on June 3rd 2008

denying the Department of Justice (DOJ) motion to dismiss and transferring the case to the U.S. District Court of Wyoming ("Court" or "Wyoming Court").

2.     On April 8th 2009, Honorable U.S. District Judge Clarence A. Brimmer granted Defendant's summary judgment claiming that Plaintiff's claims are time-barred and that equitable tolling does not apply.  (Case No. 08-00156-CAB)

3.     Three oral hearings were held: December 18, 2008; February 19th and 20th 2009.

4.     On April 28th 2009, Honorable Judge Brimmer denied Plaintiff's motion for reconsideration claiming that it was not timely filed.

5.     On May 1st 2009, Plaintiff filed a Notice of Appeal to this Honorable Court appealing Judge Brimmer's decision to grant Defendant's summary judgment and the subsequent decision to deny reconsideration.

## II.     **Statement of Facts Relevant to the Issues Presented for Review**

6.     Plaintiff Marilyn Joyce Wallace worked as a teacher at a local school district in the state of Michigan.  In 1986, she retired from her teaching position and has been an inhabitant of the State of Wyoming since 1991.

7.     Plaintiff's problems with the Internal Revenue Service (IRS) involve tax years 1985 through 2003.  Plaintiff considers the levy against her pension checks to be illegal.

### A.     **Facts Related to Tax Returns**

Tax Years 1985 through 1994

8.     Plaintiff filed Form 1040s and paid timely for tax years 1985 to 1993.  (Exhibit A-30)

9.  On May 30, 1995, Plaintiff filed Form 1040NR for years 1985 through 1993 and 1994. (Exhibit A-27)  Six years later, on May 14, 2001, the IRS issued a "civil penalty" in a total amount of $6,573 for years 1985 through 1994.  (Exhibit A-26)

Tax Years 1995 through 2003

10. For tax years 1994 through 2003, Plaintiff did not file her tax returns on time. Therefore, the IRS "made income tax assessments for these tax years pursuant to 26 USC 6020(b)." (Paragraph 2, page 2, of Defendant's Memorandum in Support of its Summary Judgment)

11. Later, Plaintiff filed her own tax returns on the following dates: for tax year 1994, on August 18, 2004; for 1995 through 1997, on October 12, 2005; and for 1998 through 2003, on May 23, 2005.

12. Upon filing, the total amount "owed" as listed on these returns was $4,007. If one is to add this amount to the $6,573.00 in tax penalties for years of 1985-1994 (Exhibit A-26), then the total would be $10,580.

13. The IRS service center apparently accepted these returns.  However, the levy continued illegally.

**B.    Facts Related to IRS Levy**

14. On May 14, 2001, the IRS issued a Notice of Levy to the Michigan Public School Employees Retirement System allegedly due to tax penalties owed by Plaintiff for the years of 1985-1994 in the amount of $6,573.00. (Exhibit A-26).  The other Notice of Levy provided by Defendant is for $4,984.24 (listed in Exhibit A-6, page 3).

15. On September 25, 2001 the IRS began levying Plaintiff's Michigan State Teacher's Pension in the amount of $945.54 per month. This levy continued until May/June 2006.

**C.     Facts Related to Ending the Levy**

16.     On May 25, 2006, Mrs. Wallace met with IRS Agent Thomas Bentley in Billings, MT. After Plaintiff discussed her situation, the agent told Plaintiff that he was sending the Michigan pension office a fax and was stopping the levy. <u>The agent immediately ended the levy while Plaintiff was still in his office.</u> In about a month, the second pension check after this meeting, Plaintiff began receiving her full pension payments without any IRS deductions.

17.     This meeting took place one year after Plaintiff had filed her last returns in May 2005. Officer Bentley apparently acted on information the IRS already had in its system. The delay in ending the levy was not excusable. From May 2005 to May 2006, the IRS apparently did nothing to credit Plaintiff based on her filings.

18.     Agent Bentley's action was an implicit IRS admission that the levy was already in excess of at least $1.00 and for at least one day.

**D.     Facts Related to Refunds**

19.     Almost one year after the meeting with Agent Bentley, the IRS sent Plaintiff two checks dated March 16, 2007 totaling $10,954.18 (Exhibit A-21).

20.     This was clearly an unmistakable acknowledgment by the IRS that the levy was excessive or unauthorized for the amount levied.

21.     Even if the IRS assessment is correct, the checks were received long after the assessment time period and subsequent to an administrative claim being filed.

22.    Two refund checks dated November 28, 2008, were received by Plaintiff and her husband for the amounts of $14.61 (for tax year 2000) and $3.44 (for year 2003). (Exhibit A-8)

23.    On December 1, 2008, the IRS sent Plaintiff and her husband a letter informing them that they will be receiving a refund for $2,567.65 for tax year 1997. (Exhibit A-7) But Plaintiff has not received this refund as of yet.

24.    The refunds and adjustments offer another proof that the IRS levy was excessive.

### III.    Statement of Issues

a.    **First Issue:    Whether Defendant's failure to contest the D.C. Court's ruling of June 3rd 2008 on the statute of limitations would deprive Defendant from the opportunity to raise that issue in its summary judgment before the District Court in Wyoming?**

**Argument and Authorities:**

Some of the issues settled by Judge Urbina in U.S. District Court for the District of Columbia (D.C. Court) include:

a)    The proper venue for this case is Wyoming.

b)    Plaintiff has exhausted her administrative remedies.

c)    Plaintiff has complied with the 2-year statute of limitations.

The only issues remaining before the District Court in Wyoming were:

a)    Whether Plaintiff has a claim under 26 U.S.C. §7433; and if so,

b)    The amount of damages, interest, attorneys' fees, costs, and other relief the Court deems appropriate.

According to Fed. R. App. Pro. 4(a), Defendant had sixty days to appeal the D.C. Court decisions on the issues of administrative remedies and/or statute of limitations. It did not.

Plaintiff stated in her filing that Defendant did not appeal the order of the D.C. Court which ruled in favor of the timely filing of this case. Defendant forfeited the opportunity for appeal and sought to re-litigate the issue in Wyoming.

The Wyoming Court did not address Plaintiff's protest to Defendant not abiding by the time limitation for appeal, and did not clarify in its decision the reasons it did not take into consideration the violation of that time limitation – especially since the sole issue it considered against Plaintiff was that its case is time-barred.

The Court did not clarify how not appealing an issue within the prescribed time was not also time-barred for Defendant to re-litigate this issue in Wyoming.

b.    **Second Issue:**        **Whether the Court's overruling of the D.C. Court's decision on statute of limitations was proper?**

**Argument and Authorities:**

Under the law of the case doctrine, "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous *and* would work manifest injustice." *Arizona v. California*, 460 U.S. 605, 619 n. 8 (1983)

The District Court claimed that the D.C. Court ruling was erroneous but did not explain how reversing that ruling did not manifest injustice. The test is a two-prong test, and both conditions must be met before the test applies. The Court erroneously reversed the D.C. Court by relying solely on one element of that test.

The D.C. Court stated: "to consider the attachment of the levy as the date of accrual would allow the defendant to continue illegal conduct indefinitely."

The D.C. Court's ruling was proper to prevent the IRS from continuing its "illegal conduct indefinitely" and to prevent injustice against Plaintiff. On the other hand, the Wyoming Court did not address or consider the element of injustice against Plaintiff in its decision.

c.     **Third Issue:        Whether the District Court viewed the evidence in the light most favorable to the non-moving party?**

       **Argument and Authorities:**

When determining whether summary judgment is appropriate, the Court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The D.C. Court considered "the following possible dates of accrual: May 25, 2006, the date on which the plaintiff met with Bentley and the approximate date that the levy ended; July 5, 2006, the date on which the plaintiff filed her first administrative claim; August 28, 2006, the date on which the plaintiff filed her second administrative claim; and March 16, 2007, the date on which the IRS mailed the plaintiff checks totaling $10,954.18. The plaintiff filed her complaint on October 11, 2007, which is well within two years of all of these dates."

The D.C. Court considered four scenarios under each of which it found that Plaintiff filed her lawsuit timely. Since the Wyoming Court specifically mentioned and reversed the D.C. Court's consideration of the date of releasing the levy (pages 5-6) as the date the accrual began, then the Court did not reverse the other three considerations presented by the D.C. Court: "July 5, 2006, the date on which the plaintiff filed her first administrative claim; August 28, 2006, the date on which the plaintiff filed her second administrative claim; and March 16, 2007, the date on which the IRS mailed the plaintiff checks totaling $10,954.18."

The Court did not overrule the D.C. Court's finding on these issues, and therefore these dates remain a legitimate ground for this case being filed timely. As a result, the Court's order of April 8th granting summary judgment is invalid and must be vacated because the Court did not take into consideration all D.C. Court rulings and/or opinion – as well as Plaintiff's arguments – regarding the timely filing of the complaint.

Reversing the D.C. Court on one issue does not necessarily indicate that the reversal is on all issues, especially since the Wyoming Court did not explain why the date of filing the administrative claims or receiving the IRS checks cannot be considered dates of accrual.

Even if the Court is correct about the argument it raised that "Plaintiff was required to file suit by September of 2003," the Court did not explain why counting from the date the levy ended is not an alternative and proper measure to count the two-year period. Based on case law, there is more than one correct way to count the two-year period. By taking the evidence in the light most favorable to Plaintiff, then the Court would have had to abide by the method which would find Plaintiff acting within the prescribed time-frame, as the D.C. Court properly ruled.

The Wyoming Court did not view the evidence in the light most favorable to Plaintiff. The following fourth issue proves this point as well.

**d.    Fourth Issue:        Whether the Court properly evaluated when Plaintiff knew of the "essential elements?"**

**Argument and Authorities:**

According to 26 CFR §301.7433-1(g), the cause of action accrues when a Plaintiff "has had a reasonable opportunity to discover all essential elements of a possible cause of action."

The Wyoming Court argued that (1) "Plaintiff knew of the essential elements of her cause of action as of September 2001" (Page 12-13) – when the IRS began levying Plaintiff's teaching

pension; (2) "Plaintiff was required to file suit by September of 2003" (page 12); and "Plaintiff has presented the court with no evidence to rebut the United States' contention." (page 12)

The D.C. Court also knew that the levy began in September 2001 but determined the accrual date based on other scenarios – most of which the Wyoming Court did not address.

Moreover, it is not true for the Court to claim that Plaintiff failed to present the Court with evidence "to rebut the United States' contention that Plaintiff knew of the essential elements of her cause of action as of September 2001." Plaintiff did present arguments.

In her memorandum in opposition to summary judgment, Plaintiff outlined case examples regarding different courts' interpretations of what would be considered "a reasonable opportunity" and "all essential elements." The Court failed to take all these arguments into consideration – which are repeated herein.

### A.    Case example No. 1

In *Bennett*, according to the IRS, the plaintiff had a reasonable opportunity to discover all essential elements of his causes of action by no later than February 18, 1998, when the tax liens on the plaintiff's property were released. *Bennett v. U.S.*, 366 F.Supp.2d 877 at 879 (D.Neb., 2005).

The D.C. Court took a similar position and ran the statute from the date that the levy ended. If Defendant disagreed with that ruling, Defendant should have filed a timely reconsideration or appeal.

This lawsuit was filed within two years of when the levy was released on May 25, 2006 by IRS Agent Thomas Bentley.

### B.    Case example No. 2

In *Nordbrock*, the court found that the date of submitting the administrative claims is the date of accrual. *Nordbrock v. U.S.*, 96 F.Supp.2d 944 at 946 (D.Ariz.,2000) Based on this standard, Plaintiff's lawsuit is timely.

The Wyoming Court ignored this Plaintiff's argument without explaining why "submitting the administrative claims" cannot be used in this case as a standard toward having "a reasonable opportunity to discover all essential elements."

### C.    Case example No. 3

In *Snyder v. U.S.*, the court found that "Appellants demonstrated they <u>had sufficient knowledge and capacity</u> to file a timely lawsuit by submitting various administrative filings, including their June 1998 administrative request for a lien release." *Snyder v. U.S.*, 260 Fed.Appx. 488 at 493, (C.A.3 (Del.), 2008).

In this case, Plaintiff filed her lawsuit in October 2007 within two years from July 2006, August 2006, and March 2007 – the dates when she filed her administrative claims and demonstrated "sufficient knowledge and capacity."

In its order of April 8th, the Court ignored this Plaintiff's argument without explaining why it is inapplicable toward having "a reasonable opportunity to discover all essential elements."

### D.    Case example No. 4

In *Gottlieb*, the Court said: ". . . Gottlieb's claim accrued, at the latest, on November 7, 1995, the date on which the IRS responded unfavorably to his request for administrative relief." *Gottlieb v. I.R.S.*, 4 Fed.Appx. 355, C.A.9 (Cal.), 2001. The Court added: To toll the limitations period under the "continuing wrong" doctrine, Gottlieb must establish that the IRS engaged in

repeated collection efforts, occurring after November 7, 1995. *See Nesovic v. United States,* 71 F.3d 776, 778 (9th Cir.1995).

In the present case, the IRS responded unfavorably to Plaintiffs' administrative claims in November 2008. [Exhibit A-11] Moreover, the IRS engaged "in repeated collection efforts" after the time of the levy. As an example, Plaintiff received a "statement of adjustment" from the IRS (dated December 1, 2008) asking for a payment of $22.99 despite the fact that the issue is in litigation. (Exhibit A-12)  In its order of April 8th, the Court ignored this Plaintiff's argument without explaining why it is inapplicable toward having "a reasonable opportunity to discover all essential elements."

The Court cannot accuse Plaintiff of failing to contest the "essential elements" argument presented by Defendant when the Court has failed to consider those arguments.

Even the United States argued in *Tenpenny* that the latest possible accrual date is the date Plaintiff submitted her administrative claim to the IRS. *Tenpenny v. U.S.*, 490 F.Supp.2d 852 at 858-859 (N.D.Ohio, 2007) Once again, Plaintiff's lawsuit is timely based on this standard.

Plaintiff did prove, under at least one situation or example case law presented that she has filed her lawsuit within the limitations period of section 7433.  The D.C. Court agreed. The Wyoming Court, however, granted Defendant a summary judgment without rebutting or considering all the arguments on the issues.

e.    **Fifth Issue:**              **Whether the Court's decision conflicts with the Tenth Circuit?**

   **Argument and Authorities:**

On September 6, 2001, Plaintiff (acting pro se) contested the IRS levies by filing a lawsuit in a state court – the Fourth Judicial District Court, Johnson County, Wyoming – on

September 6, 2001. The state court case number is ci-2001-0096 (Exhibit A-13, pages US-0996 to US-1003).

On December 14, 2001, the case was transferred to the District Court of the U.S. District of Wyoming with a case number 01-cv-180-J. (Exhibit A-14)  The case later reached the U.S. Court of Appeals, Tenth Circuit, which issued its order on August 6, 2002.  The Appeals' case number is 02-8032. (Exhibit A-15)

Plaintiff's lawsuit in years 2001-2002 was dismissed for failing to exhaust her administrative remedy.  Now, the Court, in its order of April 8th, dismissed the current case alleging that Plaintiff "knew" of the elements when she filed a suit in 2001-2002.

If simply knowing of the levy and objecting to it – and who would not know when money is taken from them and object to a levy – by filing a suit was sufficient to constitute "a reasonable opportunity to discover all essential elements," then the Tenth Circuit would have ruled on the issue in 2002 rather than dismissing the case for not exhausting administrative remedies.

Since exhausting the remedies is a component of the "essential elements," then the Court's decision of granting Defendant's summary judgment based on the pretext that Plaintiff "knew" the essential elements in 2001-2002 is contrary to the Tenth Circuit's intent or opinion.

**f.      Sixth Issue:    Whether Defendant met its burden under a summary judgment in showing that there is no genuine issue of fact?**

**Argument and Authorities:**

In a motion for summary judgment, the initial burden lies with the moving party to inform the court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendant did not rebut all scenarios presented by the D.C. Court relating to the timely filing of Plaintiff's complaint. Defendant did not rebut all the "essential elements" arguments and other arguments presented by Plaintiff to support her contention to the timely filing of her claim. The Wyoming Court granted the summary judgment despite the fact that legitimate arguments remain un-rebutted.

In addition, Fed. R. Civ. Pro. 56(e) requires that affidavits be made on "personal knowledge" and that the "affiant be competent to testify on the matters stated."

Defendant's summary judgment included a declaration from the Department of Justice attorney representing Defendant stating that the attached exhibits to be a "true and correct copy." The DOJ attorney did not testify to the accuracy of the information presented to the Court, but simply to the fact that the documents are true and correct "copy." There was no certification to the truthfulness of the CONTENT of these documents. There was no certification that the attorney had "personal knowledge" of the matters at issue.

Plaintiff's attorney challenged Attorney Borough's declaration in an Addendum submitted with the memorandum against summary judgment. The Court did not take this challenge into consideration or stated how Defendant met Rule 56 requirement for summary judgment.

Also, the Court did not consider Plaintiff's finding of facts and conclusion of law and all the rebuttals of Defendant's assertions. In addition, there are many arguments made by Plaintiff in the memorandum opposing summary judgment and the subsequent evidentiary materials that remained un-rebutted by Defendant. Therefore, all these arguments should be treated as conceded.

g. **Seventh Issue:     Whether the District Court's judgment is void for ignoring fraud committed by Defendant?**

**Argument and Authorities:**

Statutes of limitations are constructs of admiralty and contract law. They do not apply to common law wrongs such as murder and fraud. In this case, the Statute of Limitations is not applicable because Defendant has committed fraud, rebellion against the Constitution, and disobedience of the law.

Defendant's fraud is easily discoverable.

Defendant's transcripts contain many errors. The "Forms 4340" do not certify to the accuracy or validity of the "records of this office." There is no reference to the statutory basis or under what provisions of the Internal Revenue Code the taxes were calculated.

On January 29, 2009, Defendant submitted declarations by IRS agents Teresa Bustos and Shane Odd who were not identified as potential witnesses during discovery. However, exhibits attached to the declarations revealed that fraud was committed by the IRS against Plaintiff – leading to the huge disparity between Plaintiff's and IRS calculations (i.e., $15,554 and $50,254) for tax year 1994.

Shane Odd's Exhibits B-3, B-4, and B-5 (for year 1994) show a capital gain listed in the mount of $31,173 – which is subdivided into four amounts generated from forms 1099-B.

Excerpts from IRS Publication 550 (Exhibit A-60) states that the amount listed on Form 1099-B show "the gross proceeds from the sale." Defendant falsely asserted on Page 6 of its Submission of Evidentiary Materials that Form 1099-B show "income."

For Plaintiff to make $31,173 in "capital gain," assuming a 10% return, she would have to have about $300,000. She does not have that kind of money. The IRS is fraudulently taxing

- 14 -

the "gross proceeds" which include Plaintiff's principal. The IRS could only tax the profit on the principal, when applicable.

Even in the oral argument of February 19th, Defendant's attorney Boroughs lied when she claimed that amounts listed on 1099-B are taxable "income" when they are not. Ms. Boroughs made her statement even AFTER Plaintiff presented evidence and IRS documents stating that 1099-B reflects "gross sales".

During the February 20th oral argument, the Assistant Attorney lied in Court when she claimed that no IRS illegality was committed in the collection process when Plaintiff outlined numerous illegal measures that remain un-rebutted and thus conceded.

The Court did not address Plaintiff's assertion of the fraud allegations into consideration when it granted summary judgment. The Court did not claim that fraud did not exist in this case or that the statute of limitation applies despite its existence.

Defendant cites various cases to support its contention that an action filed under Section 7433 deals with the collection of tax and not determination or assessment. Defendant did not say if in any of its cited cases the Citizen alleged fraud in the assessment process, and the courts ignored the fraudulent assessment. In the presence of fraud, the Courts become obliged to take the fraudulent practices into consideration to prevent injustice, and to prevent the judicial system from sanctioning injustice.

The Court's order is itself a fraud and therefore invalid: firstly, for ignoring the fraud in this case; and secondly for granting Defendant's summary judgment despite Defendant's fraud.

**Even if the Court refuses to address the fraud in the excessive assessment, it is not justified in ignoring the fraud in the excessive levy** which is certainly a collection violation.

- 15 -

By adding the only two notices of levy provided by Defendant (Exhibits A-26 and Exhibit A-6, page 3), the sum total would be **$11,557.24**.

However, the IRS levied **$60,418.97** as follows:

- o   $53,895.78 from Plaintiff's pension (Exhibits A-22 and A-23). Defendant agrees and does not contest that the IRS levied this amount (Page 2, Paragraph 4, line 4, of Defendant's Memorandum in Support of its Summary Judgment).

- o   $3,449.10 from Plaintiff's social security benefits. (Exhibit A-19)

- o   $3,074.09 from Plaintiff's husband social security check. (Exhibits A-42 and A-44)

In other words, the IRS collected $48,861.73 ($60,418.97 minus $11,557.24) without any notices of levy and without following any of the procedures required for collection.

The very late refunds (Exhibits A-21, A-7, and A-8) prove that the IRS' levy was excessive. The Court's decision closes the door on the IRS to correct its theft of Plaintiff's money.


h.    **Eighth Issue:        Whether the District Court erred in dismissing Plaintiff's motion for reconsideration on April 28th 2009?**

**Argument and Authorities:**

The Court denied Plaintiff's motion for reconsideration for not being filed timely pursuant to Fed. R. Civ. P. 59(e). Plaintiffs' attorney was under the impression that he has a twenty-day period for filing the motion. The IRS and the DOJ can commit a long list of frauds for as long as they choose. But if a plaintiff makes one honest mistake, then the case is gladly DISMISSED with capital letters and all IRS and DOJ willful lies are forgiven and covered up.

However, Plaintiff did meet the requirement for relief under Fed. R. Civ. P. 60(b) and (d).

The Court could have afforded Plaintiff an opportunity due to a mistake pursuant to Rule 60(b)(1) – the mistake being of a misunderstanding in filing the motion within 20 days rather than 10 days.

In the presence of fraud and misrepresentation on the part of Defendant, relief does exist pursuant to Rule 60(b)(3) and Rule 60(d)(3). The fraud and misrepresentation is spelled out in Plaintiff's documents and analysis regarding 1099-B and other issues.

Due to Defendant's fraud, the judgment would be considered void and relief is justified pursuant to Rule 60(b)(4).

Furthermore, the Court can have justified relief pursuant to Rule 60(b)(6).

## IV.    **Do you think the district court applied the wrong law? If so, what law do you want applied?**

Yes. The Court (1) misapplied the law [please refer to Second and Third issues], (2) willfully ignored other legal standards [Third and Fourth Issues], and (3) covered-up fraud by its silence against it in its order [Seventh Issue].

In addition, as stated in oral arguments, the U.S. Supreme Court said that in equity, delay must depend on the particular circumstances of each case. *Hayward v. Eliot Nat. Bank*, 96 U.S. 611 (1877)

According to the Tenth Circuit, delay will not bar relief where it has not worked injury, prejudice or disadvantage to defendant or others adversely interested. *Shell v. Strong*, 151 F.2d 909 (1945).

Also according to the Tenth Circuit, laches consists of two elements: (1) inexcusable delay in instituting a suit; and (2) resulting prejudice to defendant from such delay. *Kadonsky v. U.S.*, 3 Fed.Appx. 898  (This case was not selected for publication in the Federal Reporter.)

If there is delay in filing this lawsuit, neither Defendant nor the Court provided proof as to injury, prejudice, or disadvantage to the IRS as a result of this delay. The IRS cheats people every single day. What happened to Plaintiff is not simply a mistake committed by an IRS employee some years ago, but a routine fraudulent practice pursued by the agency.

If there is a delay, it is an excusable delay. Plaintiff contested IRS actions throughout the time-period in state and federal courts, in tax courts, and through correspondence with the IRS. Plaintiff was not idle during this time. She did what she could based on what she knew.

To bar Plaintiff's action on the basis of the statute of limitations would be to reward the IRS for criminal acts – such as unjust enrichment - which contravenes the court's obligation to do substantial justice. An inability to seek legal relief on time cannot be used as an excuse to deny that relief, while Defendant is left with the fruits of an illegal act. The protection of Plaintiff's rights to her money and property, and the fact that said money was levied illegally, has more constitutional relevance than Plaintiff's expertise on statute of limitations.

**V.    Did the district court incorrectly decide the facts? If so, what facts?**

Yes. Please refer to the issues outlined previously, especially the Third, Sixth, and Seventh Issues.

In addition, the Court held that both Defendants and Plaintiff have discovered new evidence which "was not available to the D.C. Court when it decided that the Plaintiff had met the statute of limitations." (page 8)

The Court did not say specifically what "new evidence" it is referring to and its relevance to the statute of limitation. The Court was supposed to clarify its position. If the Court meant by "new evidence" the cases filed by Plaintiff in Wyoming prior to this lawsuit, both parties knew of these filings or could have easily discovered the information in their own records at the time of the D.C. Court filing. Thus, that "new evidence" cannot be classified as "new." Plaintiff cannot be penalized for Defendant not using any argument sooner in this litigation process.

The Court argued that for Plaintiff to be "ignorant of her rights and the law" is not "a rare and exceptional circumstance in which the Court should equitably toll the statute of limitations." (Page 14) That was the Court's only reason for rejecting Plaintiff's equitable tolling argument. However, in Plaintiff's memorandum opposing summary judgment (paragraphs 15-30), Plaintiff never said that she was "ignorant of her rights and the law." She knew her rights and fought for them. Plaintiff simply agreed with the court in *Tenpenny* that she should not be doomed if she lacks "expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations." The Court denied equitable tolling on a faulty premise, and therefore, such a denial is void and must be reconsidered.

The Court also said: "It is inherently inconsistent for the Plaintiff to file suit in 2001 regarding the exact actions of the IRS that she is challenging here . . ." Firstly, Plaintiff's 2001-2002 lawsuits filed in Wyoming did not include all the years which encompass this lawsuit. Secondly, the 2001-2002 suits were denied for not exhausting administrative remedies. After Plaintiff exhausted those remedies, she filed another suit. It is not clear where the inconsistency is. The Court did not cite a case prohibiting inconsistency, or as if Defendant has been consistent in all its dealings with Plaintiff.

Moreover, the Court did not address Plaintiff's assertion that each IRS collection attempt is a new violation that tolls the statute of limitations. When a tort involves continuous injury, the cause of action accrues when the tortious conduct ceases, and to hold otherwise would be to allow the tortfeasor to acquire a right to continue its conduct by virtue of the statute of limitations. (The D.C. court, citing *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984))

The IRS levy which resulted in monthly deductions from Plaintiff's pension check constitutes continuing harm, which did not cease until May 2006. This case was filed within two years from May 2006. The wrong Plaintiff complains of has not ceased. The "assessment" which the IRS used to justify the levy was not a single event, but continuous. There was not one assessment, on one occasion, but multiple ones – each tolling the statute of limitations.

For example, according to a Defendant document page US-724: "the 2003 was processed with no liability . . ." However, according to an IRS letter dated December 1, 2008, Plaintiff owed $128.27 for year 2003 and is now to be refunded $2.68 after adjustments. (Exhibit A-10)

If the statute of limitations as calculated by the Court is accurate, would it not also apply to the IRS? If Plaintiff is being prevented from suing against a harm committed by the IRS, should not the IRS – under the same standard – be also prevented from continuing to harass Plaintiff and changing its "assessments" at will? The Court is denying Plaintiff the due process to challenge a lingering injury emanating from multiple and distinct assessments for the same tax years.

The IRS assessment and collection measures have not ceased. Plaintiff's Exhibits A-7, A-10, and A-12 clearly show that the IRS continues to change the assessment. Each new assessment for the years in question, followed by a collection attempt, is a new violation that tolls the statute of limitations.

The Court's ruling allows the defendant to continue illegal conduct indefinitely.    The Court's ruling promotes a manifest injustice, contrary to its responsibility to do equity and justice to the parties, and to view facts and law in the light most favorable to Plaintiff.

**VI.**    **Did the district court fail to consider important grounds for relief? If so, what grounds?**

Yes.  Most importantly, the Court failed to consider the interests of justice.    **In *Burnett*, the U.S. Supreme Court made it clear that "Policy of repose, designed to protect defendants, is frequently outweighed where interests of justice require vindication of plaintiff's rights." *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 85 S.Ct. 1050 (U.S. Ohio 1965).**

Also, please refer to the arguments outlined above in the issues section, especially the First, Third, Fourth, Sixth, and Seventh Issues.  The Court failed to consider the existence of fraud in Defendant's argument and evidence.  The Court failed to take into consideration the "essential element" argument made by Plaintiff.  The Court failed to take into consideration all the arguments made by the D.C. Court in calculating the two-year period of limitation.

**VII.**    **Do you feel that there are any other reasons why the district court's judgment was wrong?  If so, what?**

Yes. There are no statutes of limitations on the protections, rights, privileges, and immunities guaranteed to the people by the Constitution. If a man or woman is entitled to the protections guaranteed by the Constitution, then that man or woman may file a lawsuit seeking redress of grievances at any time.

Moreover, according to the Wyoming statutes, Title 39 dealing with taxation and revenue: "There are no specific applicable provisions for a statute of limitations for this chapter." W.S. 39-10-110. On that basis, federal courts can apply state statute of limitations in cases dealing with the same subject matter. Since there is no statute of limitations for taxation and revenue in the state of Wyoming, then none should be considered or applied in this case.

**VIII.** **What action do you want the court to take in this case?**

Appellant respectfully requests that the District Court's decisions of April 8th and 28th 2009 be remanded and/or overturned. Taking Appellant's allegations in the light most favorable to her, there are many genuine issues that the District Court ignored. Without offering any explanation, the District Court did not take into consideration all the triable issues and all the facts on which a reasonable jury could find in Appellant's favor.

Congress wants the Court system and the IRS to treat people fairly so that people would not join tax protesting campaigns. For over a decade, Plaintiff has not been treated fairly by both the court system and the IRS. Instead of correcting IRS wrongful conduct, that conduct is being protected against congressional intent.

**IX.** **Do you think the court should hear oral argument in this case? If so, why?**

Appellant would agree to oral argument if this Honorable Court deems it appropriate. Appellant believes that there is enough evidence in her favor – as outlined herein and other filings with the District Court.

_June 12, 2009_
Date

_Marilyn Joyce Wallace_
Signature

- 22 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June __/2____, 2009 I sent a copy of this brief by United

States mail or courier to

        Randolph L. Hunter, Esq.
        Appellate Section
        Tax Division
        U.S. Department of Justice
        P.O. Box 502
        Washington, DC 20044

__June 12, 2009__
Date

*Marilyn Joyce Wallace*
Signature