No. 09-8048

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**Marilyn Joyce Wallace,**

Plaintiff-Appellant

**v.**

**UNITED STATES OF AMERICA,**

Defendant-Appellee

ORAL ARGUMENT NOT YET SCHEDULED

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE DISTRICT OF

WYOMING – HONORABLE JUDGE CLARENCE A. BRIMMER

**REPLY BRIEF FOR THE APPELLANT**

Marilyn Joyce Wallace
22 Longhorn Drive
Buffalo, WY 82834
(307) 684-5769

# TABLE OF CONTENTS

Page

Table of Authorities………………………………………………………….. ii
Glossary of Abbreviations………………………………………………….. iv

I.     **Dates of Accrual** …………………………………………………….1
           Dates Considered by the DC Court …………………………… 1
           Dates Considered by the WY Court …………………………... 2

II.    **The WY Court's opinion conflicts with the Tenth Circuit** ……...….. 2
III.   **Appellee v. Appellee** ………………………………………………. 4
IV.    **Accrual Dates argued by Plaintiff** …………………………………4
V.     **Continuing tort Doctrine**……………………………………………5
VI.    **Equitable tolling** ……………………………………………...………8
VII.   **Constitutional violations** ………………………………………….10

VIII.  **Fraud** …………………………………………..………………….13
           Fraud in the amount of tax ……………………………...………13
           Fraud in the collection …………………………………………14
           Fraud in the litigation …………………………………….…....15

IX.    **Assessment v. Collection** ……………………………….………16
X.     **Appellee's failure to Appeal** ……………………………………19

XI.    **Law of the Case Doctrine** …………………………………..……21
           DC Court holding on statute of limitations was not erroneous……..…..21
           No injustice suffered by the IRS ……………………………….23

XII.   **United States' summary judgment did not meet the standard** ………24
XIII.  **Damages** ……………………………………………………..……….25
XIV.   **Clarifications** ……………………………………………….………27
           (a)    1985 through 1993 returns …………………………………27
           (b)    1994 through 2003 returns …………………………………27

Conclusion …………………………………………………………….....28
Certificate of Service ………………………………………………..….30

# TABLE OF AUTHORITIES

## Organic Laws

The Declaration of Independence, .................................................12
Articles of Confederation.......................................................12
Northwest Ordinance of July 13, 1787 ...........................................12
Constitution of September 17, 1787 .............................................12

## State Constitutions

State of Michigan's Constitution of 1963 (Article 9, § 24).......................11
State of Wyoming Constitution (97-1-028) .......................................11
Wyoming Statute §36-10-102 ....................................................12

## U.S. Constitution

Article I, Section 2 ...........................................................10
Article I, Section 9 ...........................................................10
The 16th Amendment .............................................................10

## Case Laws

*Arizona v. California,* 460 U.S. 605 (1983)......................................21
*Bennett v. U.S.,* 366 F.Supp.2d 877 at 879 (D.Neb., 2005) ........................4
*Bull v. U.S.,* 295 US 247, 259 (1935) ...........................................18
*Claitor v. U.S.,* 1999 WL 675337 (N.D.Cal., 1999),..............................6, 7
*Cooperman,* 214 F.3d 1162, at 1164, ............................................2, 28
*Crosby v. Buchanan,* 90 U.S. 420, 421 (1874)....................................16
*Dziura v. United States,* 168 F.3d 1249 (1st Cir. 1999)..........................7
*Gandy Nurseryv. U.S.,* 318 F. 3d 631 (5th Cir. 2003) ...........................16
*Gibson v. Klinger,* 232 F.3d 799, 808 (10th Cir.2000)" ..........................9
*Glus v. Brooklyn Eastern Dist. Terminal,* 79 S.Ct. 760 (1959).....................5
*Gottlieb v. I.R.S.,* 4 Fed.Appx. 355, C.A.9 (Cal.), 2001 ..........................5
*Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271 (1988).............20
*Hayward v. Eliot Nat. Bank,* 96 U.S. 611 (1877)...................................8
*Hrubec v. Nat'l R.R. Pass Corp.,* 829 F. Supp. 1502 (N.D. Ill 1993)...............26
*Iannelli v. Long,* 329 F.Supp. 1241, 1242 (D.C. Pa. 1971) ......................14
*Johnstone v. Bank of America, N.A.,* 173 F. Supp. 2d 809, (N.D. Ill. 2001)......26
*Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495 (1989) ..........................19, 20
*March v. IRS,* case # 02-2087.....................................................18
*Marsh v. Soares,* 223 F. 3d 1217 (10th Cir. 2000)................................9
*Matson v. Burlington North,* 240 F. 3d 1233 (10th Cir. 2001)......................5
*Midland Asphalt Corp. v. United States,* 489 U.S. 794 (1989).....................20

*Miller v. United States*, 66 F. 3d 220 (9th Cir. 1995)..................................9, 16
*Messenger v. Anderson*, 225 U.S. 436 (1912)..............................................21
*Montana v. United States, supra,* 440 U.S., at 153-154..................................23
*Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir.1995). ...........................5
*Nordbrock v. U.S.*, 96 F.Supp.2d 944 at 946 (D.Ariz.,2000) ...........................4
*Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) .............................6
*Parker v. Winnipiseogee*, 67 U.S. 545 (1862) ...........................................28
*Peck v. Lowe*, 247 U.S. 165, 172 (1918). ................................................10
*Poindexter v. Greenhow*, 114 U.S. 270, 290; 5 S.Ct. 903 (U.S. 1885) ..............6, 16
*Shaw v. United States*, 20 F. 3d 182 (5th Cir. 1994).....................................16
*Shell v. Strong*, 151 F.2d 909 (1945). ....................................................23
*Shipley v. U.S.*, 2006 WL 497720 (10th Cir. 2006)........................................3
*Snyder v. U.S.*, 260 Fed.Appx. 488 at 493, (C.A.3 (Del.), 2008) ........................4
*South Carolina v. Regan*, 465 U.S. 367, 383 (1984) ....................................14
*Stanton v. Baltic Mining Co.*, 240 U.S. 103, 112 (1916) ................................10
*Tenpenny v. U.S.*, 490 F.Supp.2d 852 at 858-859 (N.D.Ohio, 2007). ..............4, 8
*U.S. v. Fredette*, 191 Fed.Appx. 711, 713 (10th Circ. 2006) ............................9
*U.S. v. O'Conner*, 291 F2d 520 (1961) ...................................................18
*United States v. United States Smelting*, 339 U.S. 186, 199 (1950). ................21
*Wallace v. United States*, No. 02-8032 (10th Cir. 2002)..................................3

## Statues and Regulations

26 USC §6020 ..........................................................................18
26 USC §6301............................................................................15, 17
26 USC §6303 ..........................................................................7, 15
26 USC § 6304 ..........................................................................6, 15
26 USC § 6330 ..........................................................................7, 15
26 USC § 6331 ..........................................................................15
26 USC § 6343 ..........................................................................15, 25

26 USC §7214............................................................................7
26 USC §7433 ..........................................................1, 3, 8, 16, 17, 19, 25, 26
26 USC §7801............................................................................11

26 CFR 301.6203-1 .....................................................................17

28 USC §1292............................................................................20
28 U.S.C. § 1346(a)(1). .................................................................1
28 USC §2401(b) ........................................................................7

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 11............................................................................ 26

Fed. R. Civ. Pro. 56 ...................................................................... 25

## Misc.

o 1B J. Moore & T. Currier, Moore's Federal Practice ¶¶ 0.401, 0.404[1] (2d ed. 1982) . . . ...........................................................................21

o 1988 U.S.C.C.A.N. 5048, 5288 n. 1. ...............................................7

o Black's Law Dictionary ...........................................................10

o H.R.Conf.Rep. No. 1104, 100th Cong., 2d Sess. 228 n. 1 (1988)............7

# GLOSSARY OF ABBREVIATIONS

DOJ: Department of Justice

IRS: Internal Revenue Service

## APPELLANT'S REPLY BRIEF

In its brief, Appellee claims that the District Court lacks subject-matter jurisdiction because Plaintiff's complaint was not timely filed. The facts and the law prove otherwise.

Sovereign immunity has been waived because the United States has consented to be sued. The U.S. District Court has original jurisdiction of: "Any civil action against the United States for the recovery of any income tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." See 28 U.S.C. § 1346(a)(1).

Moreover, 26 USC 7433 permits anyone to seek civil damages for certain unauthorized collection actions. The question to be resolved under this section relates to the statute of limitations.

### I.    Dates of Accrual

#### Dates Considered by the DC Court

In its order of June 3, 2008, the U.S. District Court for the District of Columbia ("DC Court") considered the following possible dates of accrual:

o   May 25, 2006, the date on which the plaintiff met with Bentley and the approximate date that the levy ended;

o   July 5, 2006, the date on which the plaintiff filed her first administrative claim;

o   August 28, 2006, the date on which the plaintiff filed her second administrative claim;

o   March 16, 2007, the date on which the Internal Revenue Service (IRS) mailed the plaintiff checks totaling $10,954.18.

The D.C. Court concluded that Plaintiff's lawsuit was timely because "plaintiff filed her complaint on October 11, 2007, which is well within two years of all of these dates" – despite the fact that the D.C. Court knew that the levy attached in 2001.

### Dates Considered by the WY Court

In its order of April 8, 2009, the U.S. District Court for the District of Wyoming ("WY Court") stated: "Because the D.C. Court determined that the accrual date of the action began only after the levy had ended, it found that Plaintiff had filed suit 'well within two years.'"

The WY Court acted on the assumption that the date the levy had ended was the ONLY date considered by the DC Court. That is not true. The DC Court's decision was based on four separate dates, according to which it found Plaintiff's lawsuit timely. The WY Court did not rebut all the dates argued by the DC Court. The WY Court did not offer an explanation on why it did not consider the other dates.

By viewing the evidence and drawing "reasonable inferences therefrom in the light most favorable to the nonmoving party," *Cooperman*, 214 F.3d 1162, at 1164, the WY Court should have taken all dates into consideration. It did not do so – and acted contrary to the standard applicable in evaluating summary judgments.

### II.    The WY Court's opinion conflicts with the Tenth Circuit

The WY Court argued that I "knew" of the levy that it was illegal, and that I "objected" to the IRS levy throughout the time the levy was in place. As a result, the WY Court concluded that I had more than a reasonable opportunity to discover all of the essential elements.

Both the WY Court and Appellee cited *Shipley*. In that case, the Tenth Circuit said: "ordinarily, a right of action accrues when the levy commences." That is "ordinarily." It does not mean in every case the action accrues when the levy commences. It does not mean that this

2

is the only condition that the court would consider. Even in *Shipley*, the Tenth Circuit said: "The district court allowed for the possibility that Shipley might acquire additional facts essential to his claim during the pendency of the levy and generously set the starting date at November 4, 2002; the date the levy ended."

In *Shipley*, the Court considered "the date the levy ended" as an option for the date of accrual. The DC Court considered this option and found the suit timely. The WY Court did not address this option, although it was on the record. Appellee never claimed that this option is improper. . . They simply ignored it.

In *Wallace v. United States* (No. 02-8032), the Tenth Circuit claimed that "Plaintiffs could not rely on 26 USC 7433(a) because they failed to allege exhaustion of administrative remedies." Appellee admits in a footnote on page 16 of its brief that exhausting administrative remedies, and awaiting IRS ruling or waiting six months, is a prerequisite to filing suit.

Since administrative remedies are pre-requisites to filing suit, and since I did not exhaust my administrative remedies in 2001, then I could not have known the "essential elements" at that point. The WY Court's opinion in claiming that I knew the essential elements conflicts with the Tenth Circuit's statement which denied reliance on section 7433 for lack of administrative claims – which is one essential element. I could not have known something in 2001 when the Tenth Circuit's opinion includes evidence to the contrary.

Appellee cannot say in one part of their brief that administrative claims are a prerequisite to filing suit (i.e., an essential element), and then in another part of the brief say that the 2001 suit was a proper measure of knowing the "essential elements" when no administrative claims were filed at that point. Even if I knew when the levy began, even if I believed from the beginning that the levy was illegal, even if I believed that a suit would have been warranted in

3

2001 (and I did file a suit in 2001), all these reasons are not sufficient to constitute essential elements because no administrative claims were filed, no sovereign immunity was waived in 2001 for a 7433 action (as per Appellee's footnote on page 16), and no 7433 suit could have been successful. Therefore, I did not know all the elements.

### III.    Appellee v. Appellee

In *Tenpenny*, it was the United States (Appellee) which argued that the latest possible accrual date is the date Plaintiff submitted her administrative claim to the IRS. *Tenpenny v. U.S.*, 490 F.Supp.2d 852 at 858-859 (N.D.Ohio, 2007). The DC Court considered this option and found my lawsuit timely. The WY Court did not address this option, although it was on the record. Appellee never claimed that this option is improper... They simply ignored it.

My October 2007 lawsuit was timely from the dates of filing the administrative claims.

### IV.    Accrual Dates argued by Plaintiff

The WY Court falsely accused Plaintiff of presenting "no evidence to rebut the United States contention that Plaintiff knew of the essential elements of her cause of action as of September 2001." The record proves otherwise.

In "Plaintiff's Memorandum in Opposition to Motion for Summary Judgment" (December 12, 2008), Plaintiff outlined case examples regarding different courts interpretations of what would be considered the date of accrual. Plaintiff argued the following dates:

- The date the levy ended (May 25, 2006) – based on *Bennett v. U.S.*, 366 F.Supp.2d 877 at 879 (D.Neb., 2005) and similar to the DC Court ruling.

- The dates of submitting the administrative claims – based on *Nordbrock v. U.S.*, 96 F.Supp.2d 944 at 946 (D.Ariz.,2000); *Snyder v. U.S.*, 260 Fed.Appx. 488 at 493, (C.A.3 (Del.), 2008); and similar to the DC Court ruling.

4

- The date the IRS responded unfavorably to Plaintiff's administrative claims (Nov. 5, 2008) [Exhibit A-11] – based on *Gottlieb v. I.R.S.*, 4 Fed.Appx. 355, C.A.9 (Cal.), 2001.

- The dates of repeated IRS collection efforts that toll the limitations period under the "continuing wrong" doctrine. *Gottlieb v. I.R.S.*, 4 Fed.Appx. 355, C.A.9 (Cal.), 2001. *See Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir.1995). One example is a "statement of adjustment" from the IRS (dated December 1, 2008) asking for a payment of $22.99 despite the fact that the issue is in litigation. (Exhibit A-12)

- The equitable tolling standard.

Plaintiff argued that the Statute of Limitations is not applicable because Defendant has committed fraud, rebellion against the Constitution, and disobedience of the law.

I believe that my lawsuit is timely based on at least one of the dates or options presented by Plaintiff and the DC Court. If a plaintiff's lawsuit is untimely based on one criteria, but timely based on another, then it would be considered as timely based on the standard of taking the facts in the light most favorable to a plaintiff.

The WY Court cannot accuse Plaintiff of not presenting evidence, while the evidence exists in pleadings and oral arguments, but the WY Court ignored it.

## V.   Continuing tort Doctrine

On page 17 of its brief, Appellee cited *Matson*, a case dealing with the Federal Employers' Liability Act. However, the U.S. Supreme Court stated: "We have been shown nothing in the language or history of the Federal Employers' Liability Act to indicate that this principle of law [no man may take advantage of his own wrong], older than the country itself, was not to apply in suits arising under that statute." *Glus v. Brooklyn Eastern Dist. Terminal*, 79 S.Ct. 760, 762-763 (1959).

5

The D.C. Court properly ruled that "to consider the attachment of the levy as the date of accrual would allow the defendant to continue illegal conduct indefinitely. *See Cliator*, 1999 WL 675337, at \*4 (citing *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir. 1984) (explaining that when a tort involves continuous injury, the cause of action accrues when the tortious conduct ceases, and to hold otherwise would be to allow the tortfeasor to acquire a right to continue its conduct by virtue of the statute of limitations)). " This decision is consistent with the U.S. Supreme Court's ruling that whatever the government "does say and do must be lawful." *Poindexter v. Greenhow*, 114 U.S. 270, 290; 5 S.Ct. 903, 914 (U.S. 1885)

The "assessment" which the IRS used to justify the levy was not a single event, but continuous. There was not one assessment, on one occasion, but multiple ones – each tolling the statute of limitations.

According to a Defendant document page US-724: "the 2003 was processed with no liability . . ." According to Exhibit A-10 dated Dec. 1, 2008, Plaintiff owed $128.27 for year 2003 and is now to be refunded $2.68 after adjustments. The IRS' new assessment and collection measures did not cease. Plaintiff's Exhibits A-7, A-10, and A-12 clearly show that the IRS continues to change the assessment. Each new assessment for the years in question, followed by a collection attempt, is a new violation that tolls the statute of limitations.

For the tax years in question, when did the last tortuous act occur? In Appellant's analysis, December 1, 2008 – the date of a "statement of adjustment" from the IRS asking for a payment of $22.99. (Exhibit A-12; see also Exhibit A-10) The IRS violated 26 USC 6304 by repeatedly contacting me while I was being represented and while the issue is in litigation.

In addition, Appellee acknowledges that the total amount that the IRS collected from my pension was $53,895.78, but Appellee never provided any proof that there were notices of levy

6

issued for that amount. In fact, during discovery, Appellee acknowledged there were only two notices of levy (which added to $11,557.24). Even if the amount on the levies is correct to the amount of the taxes owed, every deduction from my pension that took place after the $11,557.24 was satisfied tolls the statute of limitations and is a violation of 26 USC §6303, 6330, 7214(a)(2) and other provisions not followed in the levy process. The monthly deductions from my pension check constituted continuing harm, and did not cease until May 25, 2006.

It is the "cumulative effect" of monthly deductions, "adjustment" to assessments, and collection attempts that entitle Appellant to rely upon the continuing tort exception to 28 USC 2401(b) which applies to the limitations period contained in section 7433(d)(3). Congress clearly intended a portion of the substantive law surrounding § 2401(b) to be used in the interpretation and application of § 7433(d)(3). See, e.g., H.R.Conf.Rep. No. 1104, 100th Cong., 2d Sess. 228 n. 1 (1988), reprinted in 1988 U.S.C.C.A.N. 5048, 5288 n. 1.

By relying on *Dziura v. United States*, the WY Court claimed that Plaintiff "had more than a reasonable opportunity to discover all of the essential elements of her claim by September 2003, two years after the levy commenced." The WY Court is justifying 32 months of illegal IRS conduct (between Sept. 2003 and May 2006) and sanctioning IRS' unjust enrichment, illegality, and fruits of the fraud – by denying me a right to challenge IRS conduct during that period.

"The Court respectfully disagrees with the conclusion reached by the First Circuit in *Dziura* in light of the injustice that would result from its application to this action." *Claitor v. U.S.*, 1999 WL 675337 (N.D.Cal., 1999) Applying *Claitor*'s reasoning to this case, the IRS failed to release the levy until many months after the amount listed on the notices of levy was collected. If the statute of limitations was held to have run in 2003, nothing prevented the IRS from wrongfully maintaining the levy in place after that period. Since "one should not be

allowed to acquire a right to continue [ ] tortious conduct" by operation of a statute of limitations, the statute of limitations cannot be said to have run. There was no reason to enter summary judgment in favor of the United States on the statute of limitations.

The WY Court did not address Plaintiff's assertion that each IRS collection attempt is a new violation that tolls the statute of limitations. The WY Court's ruling was unjust, contrary to its responsibility to do equity and justice to the parties, and to view facts and law in the light most favorable to Plaintiff. The Court denied Plaintiff's due process to challenge a lingering injury emanating from multiple and distinct assessments and collections for the same tax years. The WY Court's decision is also contrary to the concepts outlined by the U.S. Supreme Court in *Poindexter* that whatever the government does must be lawful.

## VI.  Equitable tolling

In Appellee's brief, in a footnote on page 22, I was accused of not renewing the contention of equitable tolling. That is not true. On page 19 of my A-21 brief, it was written: "The Court denied equitable tolling on a faulty premise, and therefore, such a denial is void and must be reconsidered." It is clear that I am contesting the District Court's ruling on this issue.

According to the U.S. Supreme Court, in equity, delay must depend on the particular circumstances of each case. *Hayward v. Eliot Nat. Bank*, 96 U.S. 611 (1877).

There is no clear precedent disallowing equitable tolling in § 7433 actions . . . the Plaintiff reasonably may have been mislead and, as such, should not be completely doomed for her failure to develop expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations applicable in § 7433 actions. *Tenpenny v. U.S.*, 490 F.Supp.2d 852, 860-861 (N.D.Ohio, 2007). (Plaintiff's memorandum in opposition to Summary Judgment)

The WY Court interpreted plaintiff's lack of expertise with "regulations governing the statute of limitations" as a justification to claim that ignorance of Plaintiff's rights and law cannot invoke the protections of equitable tolling. The 2001 and 2007 lawsuits filed by Plaintiff are not necessarily "exact actions" as the WY Court claimed. At the very least, the 2001 action was not primarily a 7433 lawsuit, and the cases do not encompass exactly the same tax years.

In its decision, the WY Court mainly relied on *Fredette*, *Marsh*, and *Miller*. Although none of these three cases relate to taxation, examples of when equitable tolling is available include: "when a prisoner is actually innocent, when an adversary's conduct-or other uncontrollable circumstances-prevents him from timely filing, or when he actively pursues judicial remedies but files a defective pleading during the statutory period. *Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir.2000)*" *U.S. v. Fredette*, 191 Fed.Appx. 711, 713 (10th Circ. 2006)

The WY Court did not consider my innocence as to tax liability, the IRS conduct, my pursuit of judicial remedies, or any circumstances that could justify relief.

In my filings with the WY Court, I challenged the lawfulness of the liability being imposed. (Plaintiff's Memorandum in Opposition to Summary Judgment; Plaintiff's Evidentiary Materials) In my deposition, I challenged the IRS jurisdiction over me. (16:15-25; 17:1-18; 18:13-15) I also stated that I acted in certain situations under IRS' threats, duress, and coercion. (18:16-18; 26:13-18; 30:13-20; 35:8-12) In Plaintiff's Memorandum in Opposition to Summary Judgment, I outlined how I actively pursued judicial remedies. During Deposition, I stated: "I tried everything I knew to do." (43:19-20) I was not idle. I was doing what I could.

The record includes convincing reasons that meet the criteria of "rare and exceptional circumstances" under equitable tolling. The WY Court did not say that it rejects this relevant and undeniable evidence expressed in my filings and deposition. The WY Court should have

9

applied equitable tolling since the facts and law meet at least one standard in one of the cases the Court cited in its decision.

Appellee never proved the lawfulness of the tax liability, never proved IRS jurisdiction over me, never proved the legality of IRS conduct or specifically rebutted all the assertions to illegality, and never proved that I did not diligently pursue my claim.

The WY Court used quotes from the deposition to support its ruling, but did not explain why other quotes challenging tax liability, IRS conduct or jurisdiction, and my attempts to pursue my rights were not applicable to the same issue it decided.

"Equitable" means "just, fair, and right, in consideration of the facts and circumstances of the individual case." (Black's Law Dictionary)  The WY Court was not just, fair, and right, in consideration of the facts and circumstances of my case.

## VII.    Constitutional violations

Appellant's A-21 brief stated that Appellee "has committed fraud, rebellion against the Constitution, and disobedience of the law."    These violations were mainly described in "Plaintiff's Evidentiary Materials" (pages 17 through 46) and in "Plaintiff's Memorandum in Opposition to Summary Judgment" (pages 17 through 24).  These arguments are incorporated toward the appeal and remain mostly uncontested and thus conceded.

According to the U.S. Constitution, Article I, Section 2: "direct taxes shall be apportioned among the several states." Article I, Section 9: "No capitation, or other direct, tax shall be laid, unless in proportion to the Census or Enumeration . . ." Even if the 16th Amendment was properly ratified, it "conferred no new power of taxation . . ." *Stanton v. Baltic Mining Co.*, 240 U.S. 103, 112 (1916) and "does not extend the taxing power to new or excepted subjects . . ." *Peck v. Lowe*, 247 U.S. 165, 172 (1918).

10

The IRS is organized under section 7801 which states

> The administration and enforcement of the following provisions of this title [Title 26] shall be performed by or under the supervision of the Attorney General; and the term "Secretary" or "Secretary of the Treasury" shall, when applied to those provisions, mean the Attorney General; and **the term "internal revenue officer" shall,** when applied to those provisions, **mean any officer of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.** . . (Section 7801(a)(2)(A))

The tax being imposed on my pension is not apportioned among the several states. Appellee never provided me with any statutory provisions that would make my pension taxable. Appellee never defined the character of the tax being imposed. Appellee never provided me with any verifiable document to show that the IRS conduct against me is being "performed by or under the supervision of the Attorney General." I have no document to prove to me that anything being done by the IRS against me received proper authorization.

There is no basis in the U.S. Constitution for the imposed tax on my pension, and there is no justification for it in the state constitution. The IRS violated the State of Michigan's Constitution of 1963 by levying my Michigan pension and by interfering with "a contractual obligation thereof which shall not be diminished or impaired thereby." (Article 9, § 24)

According to the State of Wyoming Constitution: "No tax shall be imposed without the consent of the people or their authorized representatives." (97-1-028) There is no evidence that the IRS has been given consent by the state's legislature or people to collect tax in Wyoming. There is no evidence that the "tax" being collected from me is lawful. Appellee never provided any evidence to prove otherwise.

In this case, the IRS levied a "tax" that is not a lawful tax. The IRS fabricated its own "tax" that is not authorized by the U.S. Constitution or the Wyoming Constitution and imposed it on me, an inhabitant of Wyoming, without any legislative or people's consent. The WY Court

11

did not say that it rejected these arguments. Appellee did not provide a counter-argument to prove the character of the tax in question, or the constitutionality of IRS conduct.

In my deposition, I challenged the IRS jurisdiction over me. (16:15-25; 17:1-18; 18:13-15) According to §36-10-102, the jurisdiction of the state of Wyoming is ceded to the United States ONLY over any land so acquired by the United States. The federal government's jurisdiction in Wyoming is limited only to federal territory in Wyoming – not to all of Wyoming. As far as I know, I do not live on any federal land. The State of Wyoming is a sovereign state, and I am a sovereign woman. The federal government has no jurisdiction or authority over me. They are trespassing.

The Declaration of Independence, the Articles of Confederation, Northwest Ordinance of July 13, 1787, and the Constitution of September 17, 1787 are the sources of all written laws made by the Congress of the United States. These Organic Laws show how any American can decide to be an Inhabitant and still be entitled to all the privileges and immunities of free citizens in the several states. An American Inhabitant can collect earned Social Security benefits without admitting to United States residence. The Organic Laws prove that the Congress of the United States can only make laws for the federal government and the administration of the territory owned by and ceded to the United States of America.

Appellee makes a reference that I am a "resident" of Wyoming. I would like to clarify this point and say that I am an inhabitant of Wyoming – despite the fact that a mistake was made in the past in one of my documents where the word "resident" was mentioned. I am an inhabitant of Wyoming, and not a resident.

There is a substantial showing that constitutional violations are in place, and that my constitutional rights are being denied. As far as I know, there is no statute of limitations for any

12

violation of the organic laws, the U.S. Constitution, the Wyoming Constitution, and the Michigan Constitution. There are no statutes of limitations on the protections, rights, privileges, and immunities guaranteed to the inhabitants. If a man or woman is entitled to the protections guaranteed by the Organic laws, then that man or woman may file a lawsuit seeking redress of grievances at any time. The protection of my rights to my money, and the fact that said money was levied illegally, has more constitutional relevance than statute of limitations.

## VIII.  Fraud

On page 23 of its brief, Appellee states: "Wallace accuses the United States of fraud, but her contention goes solely to the amount of tax the IRS assessed against her, not to any cause of action for an alleged violation of the Internal Revenue Code that may be remedied under IRC 7433." Appellee's brief did not deny the existence of fraud in calculating the amount of tax. Moreover, the WY Court did not say that it rejects the fraud charges argued by Plaintiff as a justification to toll the statute of limitations or any other relief.

The fraud was committed in calculating the amount of tax, in the collection, and in the litigation process. The following is a descriptive summary of the circumstances constituting fraud.

### Fraud in the amount of tax

As stated under the "Constitutional violations" section, the tax imposed is not a direct tax on my pension authorized to be collected. The IRS is collecting a "tax" while it refuses to provide proof as to its constitutionality or character. I had been writing the IRS for over ten years, and I have not received any legitimate proof that the IRS is authorized to do what it does against me.

13

In addition, another fraud in the amount of tax was exposed during discovery. In "PLAINTIFF'S EVIDENTIARY MATERIALS RELATED TO FORM 1099-B" filed on February 18, 2009, evidence was presented exposing the IRS fraud in taxing the "gross proceeds" listed on form 1099-B. (Plaintiff's Exhibits A-60, A-61, and A-62) For me to make $31,173 in "capital gain," assuming a 10% return, I would have to have about $300,000. I do not have that kind of money. I did try in the past to get a clarification from the IRS regarding the IRS allegation about the amount I allegedly owe for year 1994, but to no avail.

### Fraud in the collection

In an Anti-Injunction Act case, Justice Blacknum said in a concurring opinion: "a necessary step in applying the Anti-Injunction Act, that is, the determination whether the litigation is a suit for the purpose of restraining any tax." *South Carolina v. Regan*, 465 U.S. 367, 383 (1984) In the same context, a necessary step in determining violation of tax collection that may be remedied under section 7433 is the determination of whether the IRS is collecting a legitimate tax.

Since the amount of the tax is fraudulent and not legitimate, then the collection is fraudulent and not legitimate as well. Since the assessment procedure was not followed, "the assessment is void and the executions based thereon are invalid." *Iannelli v. Long*, 329 F.Supp. 1241, 1242 (D.C. Pa. 1971)

Collection violations were mainly described in "Plaintiff's Evidentiary Materials" (pages 30 to 46) and in "Plaintiff's Memorandum in Opposition to Summary Judgment" (p. 12 to 16).

Appellee acknowledges that the total amount that the IRS collected from my pension was $53,895.78, but they never provided any proof that there were notices of levy issued for that amount. From the time the case was in Washington, DC, we had been saying that the IRS

14

illegally collected far more money than what was listed on the two notices of levy (which added to $11,557.24).

If the assessment was $60,000, the IRS issued only two Notices of levy in a total amount of $11,557.24. This is clearly a deficiency in notice and Appellee's violation of 26 USC §6303. The IRS collected tens of thousands of dollars from me without any Notice or proper procedure.

According to Exhibit A-26, "this levy won't attach funds in IRAs . . . or any other retirement plans in your possession or control, unless it is signed in the block to the right." However, the Notice of Levy was never signed "in the block to the right." Yet, the IRS levied my pension in violation of guidelines stated on its own form. Appellee did not offer evidence that the IRS employees who signed the Notices of Levy are authorized under Section 7608 to sign such a notice. The IRS is in violation of sections 6301, 6303, 6304, 6330, 6331, 6343, etc.

<u>Fraud in the litigation</u>

IRS Agent Shane Odd's Exhibits B-3, B-4, and B-5 (for year 1994) show a "capital gain" listed in the amount of $31,173 – which is subdivided into four smaller amounts generated from forms 1099-B. The $31,173 is the amount of "the gross proceeds from the sale" which includes my original principal. This is a proof that I was being taxed on the money I used to buy stocks.

Even after exposing the 1099-B fraud, the DOJ Attorney Ms. Borough made a statement in Court on February 19, 2009 as if the amount of "tax" allegedly owed is correct. Despite the collection violations outlined in the record, Assistant U.S. Attorney said in Court on February 20, 2009 that no collection violations took place. In its brief, Appellee never explained how all the violations outlined in the record are proper collection measures.

In light of all the evidence on the assessment, collection, and litigation process, Appellee is guilty of outrages misconduct, fraud, misrepresentation, and deception – and the equitable

estoppel applies. The WY Court did not take Appellee's fraud into consideration. Ignoring the fraud is a fraud.

"In a court of equity deliberate concealment is equivalent to deliberate falsehood." *Crosby v. Buchanan*, 90 U.S. 420, 421 (1874)

Whatever the government "does say and do must be lawful." *Poindexter v. Greenhow*, 114 U.S. 270, 290; 5 S.Ct. 903, 914 (U.S. 1885) Doing otherwise would obliterate "the line of demarcation that separates constitutional government from absolutism" and would be a form of communism. Id at 291.

Every law, every fact, that is in my favor is considered inapplicable or ignored by both the government and the court. It is this mentality of absolutism and communism that is the issue in this case. The IRS conduct is unlawful. The DOJ attorneys should not be aiding in the commission of fraud and illegality, and the courts are not supposed to sanction illegality.

### IX.    Assessment v. Collection

On page 23 of its brief, Appellee writes: "challenges to an assessment or to the amount of tax owed by a taxpayer cannot be raised in suits brought under 7433." Appellee cites *Gandy Nursery, Miller v. United States*, and *Shaw v. United States*. These cases do not relate to the lawfulness of the assessment.

Arguing with the IRS between owing a $1,000 or $500 is a challenge to the amount of tax. Arguing whether the tax is legitimate or whether the IRS has the authority to impose the tax is a challenge to the lawfulness of the tax.

In this case, Plaintiff's argument may be summarized in two parts:

1.   One relates to the unlawfulness of IRS actions – as outlined in "Plaintiff's Evidentiary Materials" (pages 17 to 30). The amount of "tax" itself is not the ultimate issue, but to expose the IRS fraudulent process in calculating the amount.

2.   Another relates to reckless or intentional collection violations by the IRS – as outlined in "Plaintiff's Evidentiary Materials" (pages 30 to 46) and other filings.

If a person "cannot seek damages under 7433 for an improper assessment," it does not mean that fraudulent assessment should not be exposed, and it does not mean that damages should not be awarded for the collection violations outlined in the case.

According to Appellee: "Based on reports (such as Forms 1099) it received from third-party payors, the IRS . . . made income tax and civil penalty assessments." (p. 4) "In an effort to collect Wallace's assessed tax liabilities, in May 2001 the IRS issued a notice of levy" (p. 5)

Even in Appellee's own words, it is clear that the assessment was a prelude to collection. In that respect, it would be logical to analyze the Forms 1099 and any other issue surrounding the assessment to ascertain to its lawfulness as a means to prove a collection violation.

If the IRS has no authority to collect what it is collecting, then that would be a collection violation. The first section of Chapter 24 "Collection" is "6301 – Collection Authority." The idea behind presenting the constitutional and the lawfulness arguments in my pleadings is to prove that the IRS has exceeded its authority – and therefore is liable for collection violation, since it is collecting that which it is not authorized to collect.

According to 26 CFR 301.6203-1, the assessment should provide information as to "the character of the liability assessed." Appellee did not say the character of the tax alleged. Is it direct, indirect, excise, or something else?

17

During litigation, Appellee claimed that the IRS made the assessment pursuant to 26 USC 6020. When Plaintiff argued that 26 USC 6020 language does not authorize the IRS to make assessments on Form 1040 for Plaintiff's 1994 through 2003 tax returns, Appellee totally ignored the issue. Appellee's collection measures are based on fraud and falsehood, and I have a right to expose that fraud and falsehood to show the collection is an extension of fraud that began with a fraudulent assessment.

If the assessment has been done lawfully and legally, without any fraud or irregularities, then Appellee's statement that "challenges to an assessment or to the amount of tax owed by a taxpayer cannot be raised in suits brought under 7433" could have merit. However, in the presence of fraud, the courts become obliged to take the fraudulent practices into consideration to prevent injustice, and to prevent the judicial system from sanctioning injustice.

The U.S. Supreme Court says: "Once the tax is assessed, the taxpayer will owe the sovereign the amount. . ." *Bull v. U.S.*, 295 US 247, 259 (1935) In other words, the tax is not owed and cannot be collected until it has been assessed. Of course, the Supreme Court meant a lawful assessment.

In a Tenth Circuit case (*March v. IRS*, case # 02-2087), the Court said that regardless of the IRS form used – whether it is Form 23C or Form 4340, "the IRS must comply with the regulations governing the assessment process."

According to the Second Circuit, an assessment is not conclusive as to merits of assessment. *U.S. v. O'Conner*, 291 F2d 520 (1961)

It is clear that the courts are in favor of a lawful assessment and for the IRS to abide by the regulations governing the assessment as a pre-requisite to further IRS actions.

The Tenth Circuit referred to the assessment as the "assessment process." The Second Circuit referred to it as a "procedure." In the presence of evidence proving that the "process" or "procedure" has been tainted with irregularities or fraud, the courts would certainly not disengage the link between assessment and collection.

Section 7433 permits damages for violations "in connection with any collection." The IRS fraudulent process in the determination of the tax is "in connection with any collection." If there was no assessment, there would have been no collection.

It would not be just to permit a collection of tax, knowing beforehand that there is fraud or illegality in the assessment process. The issue is not primarily the amount of the assessment, but its lawfulness to justify its collection. Unlawful assessment proves improper collection.

## X.    Appellee's failure to Appeal

Before the WY Court, Plaintiff argued that Appellee is barred from raising the issue of statute of limitations in Wyoming because they failed to appeal the D.C. Court's decision.

If the statute of limitation issue was not settled by the DC Court, then Appellee possibly could have raised it before the WY Court. However, since the DC Court made a decision on the issue, then Appellee should have challenged that decision timely. Appellee did not do so. Appellee's failure to appeal in DC is a waiver of the defense in Wyoming.

Appellee cited *Lauro Lines* saying that "orders denying motions to dismiss are not final decisions, because they 'ensure [] that litigation will continue in the District Court.'" However, the full quote from *Lauro Lines* is as follows:

"An order denying a motion to dismiss a civil action on the ground that a contractual forum-selection clause requires that such suit be brought in another jurisdiction is not a decision on the merits that ends the litigation. On the contrary, such an order "ensures that litigation will

19

continue in the District Court." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 275, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). Section 1291 thus permits an appeal only if an order denying a motion to dismiss based upon a forum-selection clause falls within the "narrow exception to the normal application of the final judgment rule [that] has come to be known as the collateral order doctrine." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989)." *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 498 (1989).

This lawsuit was not transferred from D.C. to Wyoming based on a "contractual forum selection clause." No mutual contract exists between the parties in this case, and no such clause was in dispute. The forum-selection clause "is not a decision on the merits." However, whether this lawsuit was filed timely or not is a decision on the merits, and *Lauro Lines* is not applicable to this case.

Pursuant to 28 USC 1292, an order is appealable if the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . ."

Whether a plaintiff met the requirement of statute of limitations is certainly an issue that would "materially advance the ultimate termination of the litigation." Since the D.C. Court's order was appealable, then Appellee should have appealed it timely. By its failure to do so, Appellee waived its right to raise the statute of limitations issue in Wyoming. Appellee cannot raise – many months later – an appealable issue that it failed to appeal on time.

Moreover, the DC Court's ruling was appealable because Appellee was effectively out of the DC Court after the decision was made.

## XI.     Law of the Case Doctrine

Both Appellee and the WY Court relied on *Arizona v. California* to conclude that "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." The Arizona standard is a two-prong test, none of which was applied properly in this case.

### DC Court holding on statute of limitations was not erroneous

When a party seeks reconsideration of questions decided at an earlier stage of a single, continuing litigation, the law allows courts more discretion than in a case in which the party wants to upset a final judgment in another proceeding, before another judge. See generally 1B J. Moore & T. Currier, Moore's Federal Practice ¶¶ 0.401, 0.404[1] (2d ed. 1982); cf. *United States v. United States Smelting, Ref. & Mining Co.*, 339 U.S. 186, 199, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950).

In the absence of some overriding reason, a court should be reluctant to reopen that which has been decided merely to correct an error, even though it has the power to do so. See *Messenger v. Anderson*, 225 U.S. 436, 444-445, 32 S.Ct. 739, 740-41, 56 L.Ed. 1152 (1912).

The DC Court did not commit an "error" that the WY Court had to correct. To the contrary, the DC Court acted properly when it considered the statute of limitations despite the fact that neither party addressed the issue.

The WY Court stated: "in making its decision, the D.C. Court did not have the benefits of the additional evidence that has been provided to this Court with the United States' Motion for Summary Judgment." The "additional evidence" was considered as a proof that I "knew" that the levy was illegal, and I "objected" to the IRS levy on numerous occasions." (Order of April 8, 2009, page 10)

Anyone whose paycheck is cut by a third is going to know about it and object. The additional evidence did not add anything to the record that Appellee did not already know. Most of the "additional evidence" referenced by the WY Court on page 10 were documents sent to the IRS and were in IRS custody long before the lawsuit.

There are over 800 pages of documents produced by Appellee during discovery – most of which are copies of affidavits, letters, and constructive notices that I sent to the IRS contesting their authority. Conveniently, and as another proof of Appellee's fraud and concealment of evidence, Appellee did not produce letters and documents that I sent to the IRS regarding the levy. They produced mostly documents prior to September 2001 and after 2005 – as if they have no record of anything between the end of 2001 and 2005. However, one example is Document US-693, dated April 2001 and produced by Appellee, showing that I denied all IRS claims against me.

What the WY Court considered as "new evidence" was not new. Nothing on the record proves that Appellee did not know that I "knew" and "objected" to the levy before the lawsuit. Nothing on the record proves that Appellee did not know about my 2001-2002 lawsuit. Therefore, the reconsideration of the DC Court ruling was not proper since there were no new issues or changed circumstances.

The DC Court could have asked both parties to submit documentation on the statute of limitation, but it did not. Appellee could have filed motions for reconsideration or appeal, but did not. Appellee had at least seven months to raise the issue during litigation in DC, and two months to challenge it after the DC Court's order. It did not. It is not clear why I should be the one to bear the cost of their litigation decisions.

22

The error was committed by Appellee, not the DC Court. The WY Court should have held Appellee accountable for its failure to litigate a claim when it had the opportunity.

To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. *Montana v. United States, supra,* 440 U.S., at 153-154, 99 S.Ct., at 973-74.

## No injustice suffered by the IRS

According to the Tenth Circuit, delay will not bar relief where it has not worked injury, prejudice or disadvantage to defendant or others adversely interested. *Shell v. Strong,* 151 F.2d 909 (1945). There is no evidence that the Internal Revenue Service has suffered any injury, prejudice, or disadvantage by my filing of a lawsuit in October 2007.

The WY Court did not prove "a manifest injustice" against the IRS if the case is allowed to move forward. The WY Court did not explain how reversing the D.C. Court ruling would not inflict injustice on me. The WY Court relied on my legal determination that a lawsuit was warranted in 2001 while it did not consider all other determinations that I made, and did not say why these other determinations were rejected.

The WY Court did not "depart from a prior holding" based on the "law of the case," but based on the facts. The WY Court did not modify the application of the law on the facts, but reconsidered facts which were available to Appellee from the first day of litigation and did not use them in the early stages of the litigation.

23

The D.C. Court considered four different dates according to which it found the lawsuit to be timely. Appellee did not rebut all the four dates. The WY Court did not rebut all these dates as well. The un-rebutted dates remain valid and the filing of the case remains timely.

By granting the United States' summary judgment while ignoring all arguments in my favor, the WY Court is depriving me permanently of significant rights. I am the one suffering manifest injustice from the refusal to consider my claims and arguments. I stand to lose forever valuable rights which I am entitled for. This loss would be due entirely because the WY Court refused to take my evidence into consideration – or at least to make a record of its justification for not considering such evidence.

## XII.    United States' motion for summary judgment did not meet the standard

The only declaration that was offered in support of the United States' motion for summary judgment was one signed by DOJ attorney Ms. Borough. There was no affidavit from an IRS agent. Ms. Borough's declaration was challenged by me in an "Addendum" filed in opposition to summary judgment.

During the submission of additional evidentiary materials, two new declarations were filed under the names of two IRS agents. Some of the exhibits presented with the IRS declarations were exact duplicates of exhibits referenced in Ms. Borough's declaration.

The re-filing of the same information implies that the attorney recognized that the first declaration was erroneous or does not meet the requirements for summary judgment – or the attorney was seeking to distance herself from signing a statement claiming that documents were true and correct "copies" when the information within the documents were not true and correct.

However, the two new declarations by IRS agents (from "self-employment" division) were also challenged by Plaintiff for being fraudulent and containing information that was

24

inaccurate. All three declarations offered by Appellee fail the Fed. R. Civ. Pro. 56(e)(1) because the declarants were not "competent to testify on the matters stated" because their declaration contained information that is NOT true and correct.

Since the first declaration (and the two that followed) were defective, the United States' motion for summary judgment should be denied for failing Rule 56 and for being based on false information or intent to mislead. The declarations could possibly fall in the category of committing fraud against the Court.

The WY Court ignored these challenges to the declarations. The WY Court did not explain why Plaintiff's challenges were not considered or how the United States' motion met Rule 56 requirements.

## XIII.  Damages

Appellee alleged on page 8 of their brief that I did not "make any request for a refund of taxes" in the amended complaint. The amended complaint referenced that the IRS violated collection measures by "excessive and illegal levy." I did ask in the amended complaint for damages "according to 26 U.S.C. §7433" – which allow for "actual, direct economic damages." Whatever money levied in excess or illegally is "economic damages."

Also, the amended complaint asked for "other and further relief as the Court deems appropriate." That would include all that I am entitled to have – whether it is a refund or something else. Also, as stated in "Plaintiff's Evidentiary Materials": ". . . the levy is invalid. Therefore, property or money wrongfully taken from Plaintiff must be returned to Plaintiff with interest, as per IRC 6343."

The District Court did not address recovering damages for "mental anguish, anxiety, and emotional distress." However, several courts have found that pain and suffering can be sought

for violations of federal laws when the damages provisions of hose laws permit the recovery of "actual damages." *Johnstone v. Bank of America, N.A.*, 173 F. Supp. 2d 809, (N.D. Ill. 2001) (justifies mental anguish in a RESPA claim by looking at other federal laws); *Hrubec v. Nat'l R.R. Pass Corp.*, 829 F. Supp. 1502 (N.D. Ill 1993). Therefore, my "mental anguish, anxiety, and emotional distress" are permitted awards under Section 7433 which allows for actual damages.

I have suffered enough because of the IRS which is involved against me in negligent and/or intentional infliction of emotional distress, a breach of duty to act in good faith and fair dealing, fraud, fruits of the fraud, fraudulent misrepresentation, negligent and/or intentional misrepresentation, deceptive practices, unjust enrichment, RICO, etc.

DOJ attorneys are aiding and abetting and are part of a conspiracy to further and/or cover-up all these violations by consistently ignoring the facts, the Constitution, the law, and my rebuttals of their allegations.

To make matters worse, on page 10 of its brief, Appellee repeats the same lie made by previous attorneys on the case, in writing and orally before the WY Court, that "the IRS levy had not violated any provision of the Internal Revenue Code." In response to that statement, I want to incorporate into this Reply all the arguments mentioned in "Plaintiff's Evidentiary Materials" – in particular from pages 17 through 46 – which clearly show how the IRS is acting in violation of the law. Most of these challenges against IRS action were never addressed by Appellee in the District Court or in their brief. They simply ignore what I say, and then claim that the IRS did not violate any provision without rebutting the violations that were outlined. All government attorneys involved in this case are acting in violation of Fed. R. Civ. P. 11 and the ABA Model Rules of Professional Conduct.

As stated in "Plaintiff's Evidentiary Materials": Plaintiff is entitled to all the money taken from her under the invalid levies, to all non-excise "taxes" paid, court costs, attorney fees, and any other relief the Court deems appropriate.

## XIV.  Clarifications

### (a)  1985 through 1993 returns

There are two separate filings for this time-period.  Appellee mentioned only one on page 3 of its brief. I filed Form 1040s and paid timely for tax years 1985 to 1993.  (Exhibit A-30)  However, on May 30, 1995, I re-filed for years 1985 to 1993 and 1994 using Form 1040NR. (Exhibit A-27)

The IRS did not officially tell me what was "frivolous" about my 1040NR returns.  Appellee did not prove that the information on the 1040NR return is incorrect.  Regardless of whether the filing of the 1040NR in 1995 was frivolous or not, the penalties imposed by the IRS are not justified because Appellee presented no evidence to show that I was given an opportunity to withdraw these filings as per 6702(b)(3).  Appellee provided no answer on whether the IRS Center in Philadelphia, PA (where the forms were sent) has authority to process the 1040NR filings or impose the penalties – instead of the Center in Austin, TX as stated by IRS guidelines. (Exhibit A-49)  I am not in the possession of any document which would indicate to me that these penalties received supervisory approval.

### (b)  1994 through 2003 returns

On page 4 of its brief, Appellee outlines my beliefs without offering any legal provision to prove that I am wrong, to prove what they consider to be right, or to cite the provisions that give them authority over me. Everything they do is based on presumptions. Their presumptions were rebutted, and they ignore the rebuttal.

Appellee claims that "the total amount assessed exceeded $60,000." The IRS Certificates of assessments were challenged before the District Court. The DOJ never countered the challenge or proved how the alleged assessments were lawful or accurate, and based on what provision(s) of the Code.

The IRS never sent me a hand-signed invoice for any amount allegedly owed. They only send me statements which are not legitimate commercial instruments without an invoice, hand-signed under their full commercial liability. Appellee claims that I received "taxable income." What is the activity that I was involved in that would be considered taxable, and under what provision of the Code? Appellee did not say and would never say.

## CONCLUSION

"A delay in asserting a right in an action at law is only a fact to be considered by the chancellor in connection with other facts by which his discretion is to be guided in determining whether equitable relief will be granted." *Parker v. Winnipiseogee Lake Cotton & Woolen Co.*, 67 U.S. 545 (1862)

In granting summary judgment, the WY Court did not "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Cooperman, 214 F.3d 1162, at 1164*.

The WY Court did not take all the facts or law into consideration. The Court looked for arguments to justify granting the United States' summary judgment while it ignored everything else that would constitute convincing reasons to find the lawsuit timely.

The WY Court abused its discretion and did not discuss its reasons for rejecting relevant evidence. The Court's ruling allows the IRS to continue illegal conduct indefinitely.    The Court's ruling promotes a manifest injustice, contrary to its responsibility to do equity and justice

to the parties, and to view facts and law in the light most favorable to Plaintiff. The Court did not take into consideration all the triable issues and all the facts on which a reasonable jury could find in Plaintiff's favor.

The WY Court did not explain why counting from the date the levy ended – or using other outlined standards – is not an alternative and proper measure to count the statute of limitations. Based on case law, there is more than one correct way to count the two-year period. By taking the evidence in the light most favorable to Plaintiff, the WY Court could have chosen the method which finds Plaintiff's lawsuit timely, as the D.C. Court properly ruled.

I had been writing the IRS for over 10 years, and they never explained anything to me. The DOJ does the same. Whatever I do, the IRS and the DOJ will consider that I am wrong while they never explain the law about what is right.

To bar my action on the basis of the statute of limitations would be to reward the IRS for criminal acts – such as unjust enrichment – which contravenes the court's obligation to do substantial justice.

WHEREFORE Appellant requests that this Honorable Court do reverse the District Court's order in granting United States' summary judgment; and do grant the relief and damages requested by Appellant, along with fees, costs, and other relief the Court deems appropriate.

Respectfully submitted,

*Marilyn Joyce Wallace*

July 31, 2009

Marilyn Joyce Wallace

29

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July _3/_____, 2009 I sent a copy of this brief by United

States mail or courier to

       Randolph L. Hunter, Esq.
       Appellate Section
       Tax Division
       U.S. Department of Justice
       P.O. Box 502
       Washington, DC 20044

_____July 31, 2009_____
Date

_____Marilyn Joyce Wallace____
Signature