No. 09-8048

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MARILYN JOYCE WALLACE,
Plaintiff-Appellant

v.

UNITED STATES OF AMERICA,
Defendant-Appellee

ORAL ARGUMENT NOT REQUESTED

ON APPEAL FROM JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF WYOMING
JUDGE CLARENCE A. BRIMMER

SUPPLEMENTAL BRIEF FOR THE APPELLEE

JOHN A. DICICCO
  *Acting Assistant Attorney General*

THOMAS J. CLARK            (202) 514-9084
RANDOLPH L. HUTTER         (202) 514-2647
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *P.O. Box 502*
  *Washington, D.C. 20044*

*Of Counsel*:
CHRISTOPHER A. CROFTS
  *United States Attorney*

# TABLE OF CONTENTS

Page(s)

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**Cases:**

*Altair Corp. v. Pesquera de Busquets*,
    769 F.2d 30 (1st Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Dept. of Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999). . . . . . . . . . . . 9
*Dziura v. United States*, 168 F.3d 581 (1st Cir. 1999). . . . . . . . . . . 7
*E.I. Dupont Nemours & Co. v. Davis*, 264 U.S. 456 (1924). . . . . . . . 9
*Gilbert v. City of Cambridge*, 932 F.2d 51 (1st Cir. 1991). . . . . . . . 8
*Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001). . . . . . . . . . . . . . . 7
*Long v. United States*, 604 F.Supp.2d 119 (D.D.C. 2009). . . . . . . . 9
*Matson v. Burlington Northern Santa Fe R.R.*,
    240 F.3d 1233 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 6
*Mix v. Delaware and Hudson Ry. Co. Inc.*,
    345 F.3d 82 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
*R.H. Stearns Co. v. United States*, 291 U.S. 54 (1934). . . . . . . . . . . 3
*Riggs Nat'l Corp. v. Commissioner*,
    295 F.3d 16 (D.C. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 3
*United States v. Chemical Foundation*, 272 U.S. 1 (1926). . . . . . . . 3
*United States v. Kubrick*, 444 U.S. 111 (1979). . . . . . . . . . . . . . 8, 9
*United States v. Marsh*,
    89 F. Supp. 2d 1171 (D. Haw. 2000). . . . . . . . . . . . . . . . . . . . . 9
*Ward v. Caulk*, 650 F.2d 1144 (9th Cir. 1981). . . . . . . . . . . . . . . . 7

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):
    § 6331(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    § 6343(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    § 7433(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6
    § 7433(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    § 7433(d)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

**Treasury Regulations (26 C.F.R.):**
    § 301.7433-1(g)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

No. 09-8048

**MARILYN JOYCE WALLACE,**
Plaintiff-Appellant

v.

**UNITED STATES OF AMERICA,**
Defendant-Appellee

---

**ON APPEAL FROM JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF WYOMING
JUDGE CLARENCE A. BRIMMER**

---

**SUPPLEMENTAL BRIEF FOR THE APPELLEE**

---

**ARGUMENT**

In its order, the Court asked the parties to address Wallace's claims (i) that the IRS acted unlawfully for purposes of I.R.C. § 7433 to the extent it collected from the Michigan Pension Office more than $11,557.24, which was the total amount of tax shown as due on the two notices of levy included in the record, and (ii) that each monthly payment made by the Pension Office after $11,557.24 had been collected was a continuing violation that tolled the two-year limitations period of I.R.S. § 7433(d)(3). The Court also noted, in footnote 1 of its order, that – even though this goes to the underlying merits of Wallace's claims – it would be helpful if the Government were to explain how it could have collected more than $50,000

4983881.11

from the Michigan Pension Office when the only two levy notices in the record show a liability of $11,557.24.

    1. The only notices of levy in the record are (i) a levy of $6,573 for civil penalties assessed for tax years 1985 through 1994, and (ii) a levy of $4,984.24 for an income tax assessment for tax year 1998. The record, however, is not devoid of evidence that additional levies might have been issued. With both its motion for summary judgment (Doc. 33) and its submission of evidentiary materials (Doc. 54), the Government filed an IRS Form 4340 (Certificate of Assessments, Payments, and Other Specified Matters), with respect to each penalty assessment and each income tax assessment made against Wallace. Every one of the certificates includes the notation "Statutory Notice of Intent to Levy." *See* I.R.C. § 6331(d) (requiring IRS to issue a notice of intent to levy to the taxpayer at least 30 days before issuing a levy). Although the certificates do not also reflect the issuance of notices of levy, it does not follow that no such notices were issued. Indeed, the certificates for each of the penalty assessments include only the notation "Statutory Notice of Intent to Levy," but the record does include the notices of levy issued for those assessments.[1]

    In the circumstances of this case, the Court may rely upon the presumption of administrative regularity to conclude that the IRS had in fact issued additional

---

[1] Although not in the record, we have been able to confirm that a notice of levy was issued on February 3, 2003, with respect to Wallace's 1994 and 1995 tax years.

notices of levy.  Under this presumption, "[a]cts done by a public officer 'which presuppose the existence of other acts to make them legally operative are presumptive proof of the latter.'" *R.H. Stearns Co. v. United States*, 291 U.S. 54, 63 (1934), *quoting Bank of the United States v. Dandridge*, 25 U.S. (12 Wheat.) 64, 69-70 (1827).  *See also United States v. Chemical Foundation*, 272 U.S. 1, 14-15 (1926) ("in the absence of clear evidence to the contrary, courts presume that [public officials] have properly discharged their official duties"); *Riggs Nat'l Corp. v. Commissioner*, 295 F.3d 16, 20 (D.C. Cir. 2002) ("[t]he prsumption also applies to the actions of tax officials and in applying United States tax law").

    This presumption may properly be applied in this case.  Once the tax liabilities shown on the two levies included the record had been satisfied, the IRS was required by statute to release them.  I.R.C. § 6343(a)(1)(A).  Although Wallace has stated that she is not aware of any other levies having been issued, her statements in that regard are entitled to no weight.  She testified repeatedly during her deposition that over a period of years she routinely refused to accept mail from the IRS.  (Doc. 33, Ex. A (Wallace Deposition) at 22-23, 27-28, 51, 71-72, 85.)  On the other hand, because the Forms 4340 show that the IRS issued notices of intent to levy for each of the income tax assessments from 1994 through 2003, the record confirms that the IRS satisfied one of the statutory prerequisites to levying on Wallace's pension for those the income tax assessments.  Because the IRS was

required by law to release the two levies that are in the record in 2002, and because the Michigan Pension Office continued paying to the IRS $945.54 each month out of Wallace's pension, this is the quintessential case in which the presumption of administrative regularity should apply – because the issuance of additional levies was a prerequisite to the IRS's right to continue receiving those payments.

In any event, we maintain that the District Court's dismissal of this action on statute-of-limitations grounds should be affirmed regardless of whether any other levies were issued. If, however, this Court determines that the presumption of administrative regularity does not apply, and that the existence of additional levies is critical to the proper resolution of the statute-of-limitations issue, the case should be remanded for additional findings of fact on the matter.[2]

2. In its order for supplemental briefing, the Court requested the parties to address whether Wallace's cause of action might have accrued (i) at the time the IRS began to collect from the Michigan Pension Office an amount greater than the $11,557.24 shown on the two levies in the record, (ii) at the moment of each monthly collection that was received after $11,557.24 had been paid, or (iii) when the levies were released in May 2006, on the theory that each subsequent monthly

---

[2] For the remainder of this supplemental brief, we assume, *for the sake of argument only*, that the IRS did not issue any levies other than the two appearing in the record. We stress that we do not concede that no additional levies were issued.

collection was a continuing violation that tolled the two-year limitations period of I.R.C. § 7433(d)(3).

As is evident from our answering brief, we viewed Wallace's primary contention in this case as being that the IRS levies were illegal *ab initio* (based on a variety of frivolous arguments she advanced). *See, e.g.,* (Doc. 26, ¶¶ 21, 22; Doc. 38 at 12-22). As argued in our answering brief, there should be no question that *this* claim is time-barred, because Wallace has acknowledged that she believed from the time the levies were first issued that they were illegal.

In our answering brief (at 20-21), we also responded to Wallace's contention that she owed only some $10,000 in taxes, and that the IRS's levy became illegal once the IRS began collecting more than that amount from her pension. We pointed out that Wallace had kept a contemporaneous log of the amounts that had been levied (Doc. 33, Ex. A at 81 & Deposition Ex. 31), and as a result she knew no later than August 2002 that the IRS was collecting more from her pension than the amount she believed she owed. This claim was thus time-barred because in 2002 Wallace had discovered all essential elements of such a claim, but she did not file her complaint until 2007. I.R.C. § 7433(d)(3); Treas. Reg. § 301.7433-1(g)(2).

For the same reason, any claim by Wallace that the IRS is liable for damages under § 7433(a) because it collected more than the amounts shown on the two levy notices in the record is time-barred. By reason of her contemporaneous log,

Wallace knew that sometime during 2002 the IRS had collected $11,557.24 from of her pension. Once that threshold was crossed, and the IRS continued receiving payments from the Pension Office, this cause of action under § 7433(a) had accrued – because at that time she had had a "reasonable opportunity" to discover all essential elements of such a claim.

In its order for supplemental briefs, the Court specifically asked the parties to discuss whether the continuing tort doctrine applies, in which event the running of the limitations period on Wallace's claim would be tolled until the levies ended in May 2006. If this doctrine were to apply, Wallace would have a timely claim with respect to all payments made by the Pension Office in excess of $11,557.24.

Under the continuing tort doctrine, "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury." *Matson v. Burlington Northern Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001), *quoting Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996). This doctrine does not apply, however, when the injury is "definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Matson*, 240 F.3d at 1237, *quoting Tiberi*, 89 F.3d at 1431. Here, the injury Wallace claims she suffered – the unlawful loss of some $950 each month from her pension – was definite and discoverable as early as September 2002, and there was nothing that prevented her from filing suit at that

time to seek relief. Accordingly, under this Court's precedent, the continuing tort doctrine is inapplicable, and did not toll the running of the limitations period to allow Wallace to seek redress for all collections dating back to September 2002. *See also Dziura v. United States*, 168 F.3d 581, 583 (1st Cir. 1999) (applying this exception to the continuing tort doctrine in a case arising under I.R.C. § 7433).

Nor should Wallace's suit be deemed timely so as to allow her to challenge those payments received by the IRS within the two-year period immediately preceding her suit. The courts draw a distinction between a continuing violation and a single act that causes continual harm. A continuing violation is one where a tortious act occurs again and again, and gives rise to ever-increasing injuries. In that situation, it is considered unreasonable to require a plaintiff – or perhaps even to permit him – to sue over every separate incident, and so the plaintiff is allowed to reach back to the first such act even if it is outside the applicable limitations period. *E.g., Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001).

On the other hand, when a single act gives rise to continuing injuries, there is no reason to toll the period in which the plaintiff is entitled to bring suit to seek redress. In such a situation, so long as the plaintiff is aware of the act and his resulting injury, the limitations period begins to run even if his injuries might be mounting. Thus, for example, in *Ward v. Caulk*, 650 F.2d 1144 (9th Cir. 1981), the Court held that "continuing non-employment resulting from an original action is not

a continuing violation." *See also Gilbert v. City of Cambridge,* 932 F.2d 51, 58-59 (1st Cir. 1991) (recognizing the "critical distinction" "between a continuing act and a singular act that brings continuing consequences in its wake"); *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 32 (1st Cir. 1985) ("[t]he statute of limitations begins to run upon the invasion of plaintiff's interest").

In the instant case, if the IRS issued no levies other than the two appearing in the record (again, we stress that this is a point we do not concede), Wallace's cause of action accrued either at the time the levies were issued, or in September 2002 when the tax liabilities shown on the levies had been satisfied. The sole "act" taken by the IRS here was the issuance of the levies, and Wallace was aware of the precise moment when the IRS began collecting from her monthly pension an amount greater than the tax liabilities shown on the levies. We thus believe that this case is more closely akin to those in which a singular act brings continuing consequences in its wake, *Gilbert,* 932 F.2d at 58-59, and that Wallace's cause of action should be deemed to have accrued no later than September 2002. *See also Mix v. Delaware and Hudson Ry. Co. Inc.*, 345 F.3d 82, 90 (2d Cir. 2003) (limitations period begins to run once a plaintiff discovers his injury and its cause, and he may recover for additional injuries suffered during three-year period before suit only if those injuries "are sufficiently distinct from those previously suffered").

Indeed, application of the continuing tort doctrine would be improper under these circumstances. A waiver of sovereign immunity, such as I.R.C. § 7433, is to be strictly construed. *Dept. of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). Moreover, a statute of limitations "must receive a strict construction in favor of the Government" (*E.I. Dupont de Nemours & Co. v. Davis*, 264 US. 456, 462 (1924)), and the "obvious purpose" of a statute of limitations is "to encourage the prompt presentation of claims." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). Accordingly, where a cause of action, such as one under § 7433, accrues "when the taxpayer has had a reasonable opportunity to discover all essential elements of a possible cause of action" (*Long v. United States*, 604 F.Supp.2d 119, 121 (D.D.C. 2009)), the continuing tort doctrine should not apply. It is contrary to the public policy of requiring the prompt assertion of claims against the Government, and it would permit Wallace to recover for injuries suffered more than two years after she had discovered her alleged cause of action. *See Mix*, 345 F.3d at 88 (the continuous tort doctrine is "inconsistent" with a "discovery rule" governing the statute of limitations); *cf. United States v. Marsh*, 89 F.Supp.2d 1171, 1176 (D. Haw. 2000).[3]

---

[3] In any event, even if this Court were to consider Wallace's suit timely filed, she is not entitled to relief under § 7433. Section 7433(b) provides that a taxpayer may recover "actual, direct economic damages." Here, as noted in our answering brief (at 24, n.5), the IRS assessed liabilities against Wallace in excess of $60,000, and it is lawful for the IRS to levy upon the property of a person who fails to pay a assessed tax liability after notice and demand. Because Wallace did not complain of any economic damages other than the collection of her properly assessed

(continued...)

## CONCLUSION

For the foregoing reasons, and for those presented in our answering brief, the judgment of the District Court is correct and should be affirmed.

    Respectfully submitted,

    JOHN A. DICICCO
     *Acting Assistant Attorney General*

    THOMAS J. CLARK    (202) 514-9084
    s/ RANDOLPH L. HUTTER    (202) 514-2647
     *Attorneys*
     *Department of Justice - Tax Division*
     *P.O. Box 502*
     *Washington, D.C. 20044*
     appellate.taxcivil@usdoj.gov

*Of Counsel*:
CHRISTOPHER A. CROFTS
*United States Attorney*

JANUARY 2010

---

[3](...continued)
  liabilities, she is not entitled to relief.

## CERTIFICATE OF SERVICE

It is hereby certified that, on this 13th day of January, 2010, the foregoing brief was filed with the Court. The United States both uploaded the brief using the CM/ECF system and sent to the Clerk the requisite number of paper copies by FedEx. This brief was also served on the appellant, appearing *pro se*, by sending her two paper copies by FedEx in an envelope properly addressed as follows:

> Ms. Marilyn Joyce Wallace
> 22 Longhorn Drive
> Buffalo, WY  82834

It is further certified that all necessary privacy redactions have been made, and that the digital submission is otherwise an exact copy of the written documents filed with the Court, and that the digital submission has been scanned for viruses with the TrendMicro OfficeScan Antivirus program (version 8.0) and, according to the program, the submission is free of viruses.

> s/ RANDOLPH L. HUTTER
> *Attorney*